UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

RONNIE L. FAMOUS,

        Petitioner,

 v.                                                Case No. 10-C-707

SUSAN NOVAK,

        Respondent.

## DECISION AND ORDER GRANTING RESPONDENT'S MOTION TO DISMISS

Petitioner Ronnie L. Famous, who is currently incarcerated at Columbia Correctional Institution, filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, asserting that his state court conviction and sentence were imposed in violation of the Constitution. In 1998, Petitioner was convicted in Racine County Circuit Court of four counts of first-degree sexual assault of a child and one count of exposing a child to harmful material. He was sentenced to 168 years of confinement. On August 17, 2010, Petitioner filed his petition for federal relief under 28 U.S.C. § 2254. The case was originally assigned to Judge Clevert, who granted Petitioner's motion to stay the case on January 31, 2011, so he could exhaust his state court remedies. Upon Judge Clevert's retirement, the case was reassigned on December 19, 2018. On February 15, 2019, the court lifted the stay, screened the petition and ordered a response. On April 15, 2019, Respondent filed a motion to dismiss the petition as untimely. For the reasons that follow, Respondent's motion to dismiss will be granted and the case will be dismissed.

**BACKGROUND**

The sexual assault charges against Petitioner were based upon the allegations of V.B., who was ten years old at the time of the incident and eleven years old at the time of Petitioner's trial. The victim testified that, in May 1998, she and her family were at a house in which Petitioner and others resided. She stated that when she went in Petitioner's bedroom to try to calm her baby sister, Petitioner entered the room with a television and VCR, barricaded the door with a dresser, showed her a sexually explicit video, and sexually assaulted her. When the victim's younger brothers banged on the bedroom door, Petitioner removed the barricade and the victim went downstairs.

**ANALYSIS**

Respondent has filed a motion to dismiss the petition as untimely. As an initial matter, Petitioner asserts that Respondent has waived the statute of limitations defense by not raising it when the petition and motion for stay and abeyance were originally filed in 2010. But a respondent to a habeas petition is not required to respond to the petition until after the court screens the petition and orders a response. *See* Rule 4, Rules Governing § 2254 Cases ("If it plainly appears from the face of the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner. If the petition is not dismissed, the judge must order the respondent to file an answer, motion, or other response within a fixed time . . . ."). In this case, the court screened the petition on February 15, 2019, and directed Respondent to either file an appropriate motion seeking dismissal or answer the petition within 60 days. Respondent subsequently filed the instant motion to dismiss on April 15, 2019. In short, the court finds that Respondent has not waived the statute of limitations defense and will consider the merits of the motion.

The Antiterrorism and Effective Death Penalty Act (AEDPA) establishes a one-year statute of limitations for filing a habeas petition in federal court. A state prisoner seeking federal relief under 28 U.S.C. § 2254 must generally file his petition within one year of "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).

Petitioner was convicted of the charges following a November 1998 jury trial, and he subsequently pursued a direct appeal of his conviction. The Wisconsin Court of Appeals affirmed his convictions in 2001, and the Wisconsin Supreme Court denied Petitioner's petition for review on November 27, 2001. Because Petitioner did not file a certiorari petition in the United States Supreme Court, the one-year statute of limitations period began running on February 25, 2002. As a result, Petitioner had one year, until February 25, 2003, to file a federal habeas petition challenging his conviction and confinement. Petitioner did not file his federal habeas petition until August 17, 2010, well after the one-year limitation period had run. Therefore, Petitioner's federal habeas petition is untimely.

Petitioner asserts that his petition is not time-barred for three reasons: (1) Petitioner is actually innocent; (2) the institutional law library does not maintain a copy of the AEDPA statutes and he was unaware of the time limitations; and (3) a combination of ineffective assistance of appellate counsel, Petitioner's mental health issues, and prison conditions warrants equitable tolling. The court will address each argument in turn.

**A. Actual Innocence**

Petitioner asserts that he can avoid his procedural default because he is actually innocent. He has provided affidavits created in 2013 from his "alibi" witnesses—Lynette Famous, Petitioner's

3

niece, and Rosie Kelly, an individual that resided in the same house as Petitioner. Lynette Famous and Kelly assert that they would have testified at trial that Petitioner could not have barricaded V.B. into his bedroom with the television because Kelly, V.B., and V.B.'s siblings were watching the television in the living room, but Petitioner's trial counsel did not want them to testify. Petitioner also discusses the October 2005 affidavit from Charles Famous, his father, and the November 2001 affidavit of Candice Streeter, who both allege that the victim told them in 1999 that Famous "did not do anything to her." Dkt. No. 53-1 at 2.

"The actual innocence gateway is narrow." *Gladney v. Pollard*, 799 F.3d 889, 895 (7th Cir. 2015). A petitioner's procedural default can be excused only if he presents new and reliable "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free from nonharmless constitutional error." *Schlup v. Delo*, 513 U.S. 298, 316 (1995). Petitioner must show that "in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 537 (2006) (quoting *Schlup*, 513 U.S. at 327). "[B]ecause an actual-innocence claim involves evidence the trial jury did not have before it," the habeas court must assess "how reasonable jurors would react to the overall, newly supplemented record." *Jones v. Calloway*, 842 F.3d 454, 461 (7th Cir. 2016) (internal quotation marks omitted).

Petitioner's affiants do not have the credibility necessary to open the actual innocence gateway. *See McQuiggin v. Perkins*, 569 U.S. 383, 399 (2013) (directing courts to consider "the timing of the submission and the likely credibility of [a petitioner's] affiants" in assessing the reliability of actual innocence evidence). In evaluating reliability, the identity of the affiant and his or her relationship to the petitioner matters. Indeed, the testimony of new witnesses who had "no

4

evident motive to lie" stands in stark contrast to testimony "from inmates, suspects, or friends or relations of the accused." *House*, 547 U.S. at 552; *see also Hayes v. Battaglia*, 403 F.3d 935, 938 (7th Cir. 2005) (describing reliable evidence for the purpose of the actual innocence exception as the testimony of "some non-relative" who could provide a corroborated alibi); *Jackson v. Ramos*, No. 08 CV 7413, 2010 WL 4363204, at *12 (N.D. Ill. Oct. 27, 2010) ("The affidavits of two co-defendants and family members are not the type of 'trustworthy eyewitness accounts' envisioned by *Schlup* . . . ."). Rather than being reliable and disinterested witnesses, the affiants are Petitioner's family members, house mate, and friend who have a motivation to lie.

The district court may also "consider how the timing of the submission . . . bear[s] on the probable reliability of that evidence." *House*, 547 U.S. at 538; *McQuiggin*, 569 U.S. at 399 (noting that "unexplained delay in presenting new evidence bears on the determination whether the petitioner has made the requisite showing"). In this case, both affidavits of the alibi witnesses were obtained fifteen years after the 1998 trial, and the affidavits of Petitioner's father and Candice Streeter were obtained two years after the victim allegedly told them that Petitioner did not rape her. Petitioner has not explained the lateness of obtaining these affidavits. In short, Petitioner has not met the high hurdle that he must in order to establish actual innocence. Therefore, the court cannot excuse the untimeliness of the petition on this basis.

The state court postconviction proceedings offer further reasons for concluding Petitioner's showing falls short. According to the Wisconsin Court of Appeals' decision affirming the circuit court's order denying Petitioner's motion for postconviction relief based on ineffective assistance of postconviction counsel, Petitioner failed to establish that he ever told his attorney of his "alibi witnesses." Postconviction counsel testified that he filed a postconviction motion that resulted in

5

resentencing, and then filed a direct appeal. Postconviction counsel stated that before filing the motion, he discussed the case with Petitioner and retained an investigator. He recounted several issues he discussed with Petitioner but testified he did not recall Petitioner telling him that his trial attorney had engaged in retaliatory conduct, told the fact witnesses that their testimony would only harm Petitioner, or told him that the fact witnesses refused to testify. Had Petitioner told him any of these things, postconviction counsel testified he would have investigated further. *State v. Famous*, No. 2016AP1175, 2018 WI App 62, ¶ 8, 384 Wis. 2d 270, 921 N.W.2d 17. Given this history, there is no reason to excuse Petitioner's procedural default on the ground of actual innocence.

**B. Equitable Tolling**

Petitioner argues that he is entitled to equitable tolling because his appellate counsel, prison officials, the state courts, and his mental illness prevented him from timely filing his petition. Equitable tolling is an "extraordinary remedy that is 'rarely granted.'" *Carpenter v. Douma*, 840 F.3d 867, 870 (7th Cir. 2016) (quoting *Obriecht v. Foster*, 727 F.3d 744, 748 (7th Cir. 2013)). "A petitioner 'is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" *Socha v. Boughton*, 763 F.3d 674, 683 (7th Cir. 2014) (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010)). The petitioner has the burden to establish both elements, and if the petitioner fails to do so, "equitable tolling will not be applied." *Carpenter*, 840 F.3d at 870 (citations omitted).

Petitioner asserts that the limitations period should be tolled because the prison law library failed to provide him with a copy of the AEDPA statute and he lacked knowledge of the limitations

6

period as a result. He requests that he be allowed to complete discovery to fully develop the factual record that would demonstrate that the law library did not give him a copy of the AEDPA statute during his appeal process. A petitioner's ignorance or misunderstanding of the law does not rise to the level of extraordinary circumstances necessary for equitable tolling. *See Carpenter*, 840 F.3d at 872 (holding that "lack of legal training" is not an extraordinary circumstance); *see also Arrieta v. Battaglia*, 461 F.3d 861, 867 (7th Cir. 2006) ("Mistakes of law or ignorance of proper legal procedures are not extraordinary circumstances warranting invocation of the doctrine of equitable tolling." (citation omitted)). Accordingly, this does not warrant applying the doctrine of equitable tolling to his case, and Petitioner's request to conduct discovery is denied.

Petitioner argues that his appellate counsel, Attorney Mark Rosen, prevented him from preparing and filing a timely habeas petition. The Wisconsin Supreme Court denied Petitioner's petition for review on November 27, 2001. Although Petitioner claimed he made many attempts to obtain his legal file from Rosen, Petitioner did not receive his case file until June 28, 2005. Petitioner argues he was unable to file a habeas petition until he received the case file. Even if the ADEPA deadline should have been tolled until Petitioner received his case file, Petitioner did not file the petition until August 17, 2010, over five years later. In short, Petitioner has not established that he diligently pursued his legal rights once he received his case file. Accordingly, any delay in receiving the file does not warrant equitable tolling.

Petitioner further asserts that the doctrine of equitable tolling applies because his history of mental illness prevented him from filing a timely petition. He claims he suffers from several severe disorders, including delusional disorder, paranoid personality disorder, and depressive disorder, that cause Petitioner to lose touch with reality. Dkt. No. 53 at 21. The medical records submitted by

7

Petitioner do not support his claim of mental illness sufficient to invoke the doctrine of equitable tolling. Although a November 14, 2013 referral for on-site health services notes that Petitioner has a "long [history] of psychotic symptoms and delusional beliefs," Dkt. No. 64-1 at 17, a July 21, 2009 psychological services clinical contact note stated that Petitioner's thought processes were "well-organized and did not show signs of loose associations, neologisms, or derailment that would be characteristic of thought disorder/psychosis," that Petitioner's "functioning is not noticeably impaired," and that Petitioner "himself does not believe he has any type of mental health issue." Dkt. No. 53-1 at 26–27. None of the medical records submitted suggest that Petitioner was incapable of filing and preparing a habeas petition from 2002 through 2010. Stated differently, there is no evidence that Petitioner was incapable of acting upon his legal rights during the limitations period.

Petitioner also argues that his inability to obtain his legal papers from his jailhouse lawyer when that inmate was transferred to another institution warrants equitable tolling. Petitioner contends that he sent his legal materials to the inmate in July 2005 and did not receive them until April 2007. It is well established that an inmate's decision to enlist the help of a jailhouse lawyer does not warrant equitable tolling because inmates do not have a constitutional right to the assistance of counsel in habeas corpus proceedings. *See Socha*, 763 F.3d at 685; *see also Sturdivant v. Butler*, No. 15-cv-9405, 2016 WL 7324566, at *3 (N.D. Ill. Dec. 16, 2016) ("[E]quitable tolling is not warranted where a petitioner entrusts his legal papers to another inmate and, through a housing transfer, loses access to them."); *United States v. Cicero*, 214 F.3d 199, 205 (D.C. Cir. 2000) ("[The petitioner] entrusted [the jailhouse lawyer] with his legal documents at his peril."); *Paige v. United States*, 171 F.3d 559, 561 (8th Cir. 1999) (noting that equitable tolling is not

8

available to prisoner whose petition, prepared by an inmate in a different institution, was delayed in the mail). As a result, he is not entitled to equitable tolling for his delay in obtaining his legal material from his jailhouse lawyer. Petitioner has therefore failed to demonstrate that he is entitled to equitable tolling.

## CONCLUSION

Petitioner allowed the one-year statute of limitations period for federal habeas review to lapse. The circumstances of this case do not allow him to take advantage of statutory or equitable tolling. Accordingly, Petitioner's habeas petition is time-barred and must be dismissed. Respondent's motion to dismiss (Dkt. No. 49) is therefore **GRANTED**. Petitioner's motion for verification of mental health records (Dkt. No. 54) is **GRANTED**. Petitioner's motions to dismiss Respondent's motion to dismiss and to decide Respondent's motion to dismiss without the benefit of Respondent's reply brief (Dkt. Nos. 60, 61) are **DENIED**.

Under Rule 11(a) of the Rules Governing Section 2254 Cases, the court must consider whether to issue a certificate of appealability. A court may issue a certificate of appealability only if the applicant makes a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). The standard for making a "substantial showing" is whether "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted). The court concludes that its decision is neither incorrect nor debatable among jurists of reason. Accordingly, a certificate of appealability will be denied.

The Clerk is directed to enter judgment denying the petition as untimely and dismissing the action. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within 30 days of the entry of judgment. *See* Fed. R. App. P. 3, 4. In the event Petitioner decides to appeal, he should also request that the court of appeals issue a certificate of appealability. Fed. R. App. P. 22(b).

**SO ORDERED** this  10th  day of October, 2019.

>s/ William C. Griesbach
>William C. Griesbach, Chief Judge
>United States District Court